**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ROBERT R. LAWRENCE | : | |
|     Plaintiff | : | |
| v | : | Civil Action No. AW-05-2051 |
| MONTGOMERY COUNTY, MD, *et al.* | : | |
|     Defendants | : | |

o0o

**MEMORANDUM**

Pending in the above-captioned civil rights action is Defendants' Motion for Summary Judgment. Paper No. 28. The motion has been opposed by Plaintiff.[1] Papers No. 27 and 41. Also pending are several other motions filed by Plaintiff, the merits of which are addressed below. Upon review of the papers filed, the Court finds a hearing in this matter to be unnecessary. *See* Local Rule 105.6. For the reasons set forth below, Defendants' Motion for Summary Judgment shall be granted.

**Background**

Plaintiff alleges that Shon Barr, a police officer with the Montgomery County Police, violated his constitutional rights when he shot into Plaintiff's car, striking him in the hand and endangering Plaintiff's infant daughter who was also in the car. Paper No. 1. Plaintiff claims that Barr had reason to know that there was an infant in the car at the time he fired his gun into the car. He further alleges that Barr's use of force unnecessarily endangered the life of his

---

[1] Plaintiff also filed a response to Defendants' Answer. Paper No. 27. Defendants' Motion to Strike that response as being outside the scope of permissible pleadings is still pending. Paper No. 30. In light of Plaintiff's pro se status, however, the response will be construed as a Response in Opposition to Defendants' Motion for Summary Judgment. The Motion to Strike will be denied.

daughter. He seeks monetary damages in the amount of fifty-five million dollars.[2] In addition, Plaintiff seeks a public apology for the alleged false reports regarding claims that he dangled his infant daughter out of the window of a moving car. Paper No. 41.

Defendants assert that the use of force in this case was reasonable under the circumstances. Paper No. 28. They explain that the Montgomery County Police became involved in the case when Plaintiff's ex-girlfriend, Qiana Nickerson, reported that her child had been forcibly removed from her home by Plaintiff, the child's father. Plaintiff allegedly broke into the house and assaulted Ms. Nickerson with a hammer before running to an upstairs bedroom where his daughter was kept.[3] *Id*. at Ex. 1. He ran out of the house with the infant and left in his car at a high rate of speed. *Id*. After Plaintiff fled, the police were called.

Ms. Nickerson spoke with Plaintiff on his cell phone after the police arrived and was advised by Plaintiff that he would return if the police were not present. *Id*. Plaintiff's car was seen pulling into a parking space near Ms. Nickerson's house. *Id*. He drove away, again at a high rate of speed, after blowing the horn and waiting briefly. Plaintiff managed to evade police efforts to block his exit from the neighborhood and marked police cruisers began a pursuit of his car. Eventually the pursuit progressed to the southbound lane of Interstate 270 and, according to officers involved, reached speeds in excess of 100 miles per hour. *Id*.

Defendant Barr was driving a marked police cruiser on northbound Interstate 270 when

---

[2] Plaintiff subsequently amended his demand for damages to twenty million dollars. Paper No. 41 at p. 1.

[3] Witnesses told police that Plaintiff approached Ms. Nickerson's house wearing a disguise. Paper No. 28 at Ex. 1.

he heard a radio transmission[4] regarding the pursuit. *Id*. at Ex. 2. Because he had Stop Sticks, devices that puncture and gradually deflate tires, in his car, Barr exited northbound 270 and made his way to southbound 270 to provide assistance. *Id*. Barr stopped his car on the side of the road approximately 50 yards south of the Shady Grove Road overpass on Interstate 270. Another officer in a marked police cruiser arrived at the same location and both cars were positioned on the right shoulder of the road, with emergency lights flashing.

Shortly after positioning their cars, the officers saw Plaintiff's car heading in their direction, followed by police cruisers and traveling at a high rate of speed. As Plaintiff's car approached, Stop Sticks were thrown onto the road. Plaintiff's car continued to travel toward Barr at a high rate of speed, then skidded to a stop close to Barr's car near the driver's door. At this time, Barr states he did not know if Plaintiff was armed, so he drew his gun and held it in a low, ready position. *Id*.

Barr was crouched behind his car when he heard the engine of Plaintiff's car rev and the tires spinning as it was accelerated in reverse. Plaintiff's car crashed into a police cruiser on the scene, which was occupied by Officer Charles Greene, also of the Montgomery County Police Department. Both Barr and Officer Greene recall seeing smoke and hearing screeching noises from the tires of Plaintiff's car as Officer Greene's car was rammed. *Id*. at Ex. 2 and 3. The force of the impact was strong enough to lock the two cars together temporarily. *Id*. at Ex. 3. Because he believed Plaintiff was attempting to kill or seriously injure the officers on the scene, Barr fired his gun through Plaintiff's windshield three times in an attempt to stop the assault.

---

[4] In his affidavit, Barr states that he was monitoring the Rockville dispatch channel on his radio while other transmissions went out over the Germantown channel and that he was unaware of anyone else being in the car with Plaintiff. Paper No. 28 at Ex. 2.

Plaintiff was shot in his left hand but managed to drive away. Ultimately Plaintiff was apprehended at a nearby gas station and the infant was recovered unharmed.

Plaintiff disputes Barr's assertion that he did not know the infant was in the car and he did not know whether Plaintiff was armed. Papers No. 27 and 41. In addition, he alleges that accounts stating that he dangled his infant daughter out of the window of his car as he drove 30 feet across the gas station parking lot is false and offers as proof the fact that he was shot in his left hand making it impossible for him to hold the child with one hand as described. Plaintiff also claims that at the time he was shot, he was attempting to surrender to police. Paper No. 41. He does not deny, however, that he did not immediately stop his car when he knew the police were pursuing him and he admits he drove away from the scene where he was shot. Plaintiff also raises several claims regarding his reasons for taking the infant from her mother's house and casts dispersions on his ex-girlfriend's ability to properly care for her. Paper No. 27 and 41. Based on his assertions that Defendants' allegations are false, Plaintiff asserts that he is entitled to damages for slander and claims violation of his First, Fourth, Fifth, Eighth and Fourteenth Amendment rights. Paper No. 41.

## Other Pending Motions

Plaintiff has filed a Motion for Subpoena, a Motion to Reconsider his previously-denied Motion for an Indefinite Postponement, and a Motion to Appoint Counsel. Papers No. 45, 46, and 47. Plaintiff's Motion for Subpoena seeks an Order from this Court requiring counsel for Defendants to provide: statements taken from all customers and the owner of the Shell gas station where he was taken into custody; video surveillance tape of the parking lot of the same gas station; police dispatcher tapes for the evening in question; and photographs from the scene

4

of the shooting. Paper No. 45. The motion will be denied. The information sought with respect to statements or other evidence pertaining to events occurring after the shooting are not germane to the excessive force claim raised. The police dispatcher tapes[5] as well as the photographs from the scene of the shooting also are not relevant to the claim.

Plaintiff's Motion to Reconsider his Motion for an Indefinite Postponement shall also be denied. Paper No. 46. Although Plaintiff submits a letter from his criminal defense attorney which contains conclusory statements regarding the effect the instant case might have on unmentioned pending criminal charges, the letter does not clarify why resolution of the excessive force claim will impact on Plaintiff's criminal case. The Court's previous denial will not be revised. Plaintiff's Motion for Appointment of Counsel shall also be denied, for the reasons stated by this Court in its previous Order denying appointment of counsel. *See* Paper No. 39 and 40.

**Standard of Review**

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v.*

---

[5] Although Plaintiff does not provide an explanation regarding the dispatcher tapes, the Court presumes that he seeks to establish that Barr knew there was an infant in the vehicle Plaintiff was driving. As set forth more fully below, that disputed fact is not material to the claimed constitutional violation.

*Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256.

**Analysis**

Municipal Liability

Plaintiff has named Montgomery County, the Montgomery County Police Department and County Executive Douglas Duncan as Defendants. To establish liability of a municipality for an alleged constitutional tort by a local government employee, Plaintiff must establish that the conduct at issue was pursuant to a governmental policy or custom. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 691 (1978) (local governmental bodies are not liable on *respondeat superior* basis for torts committed by employees; policy or custom must be established). Plaintiff has not alleged that Officer Barr's conduct was the result of a governmental policy or custom. Rather he simply states that because Officer Barr is on the

6

County's payroll, the County should be liable for his alleged tortious conduct. Plaintiff makes allegations that a conspiracy to fabricate certain facts regarding his apprehension existed among the officers involved in the pursuit. Those allegations, which are immaterial to the excessive force claim, also are insufficient to establish liability on the part of Montgomery County and its supervisory officials. Moreover, the only basis for Plaintiff's claim against Montgomery County Executive Duncan is the fact that he was served with notice that Plaintiff was shot and intended to pursue a claim.[6] Neither basis is sufficient for purposes of constitutional liability. The Complaint as it pertains to Montgomery County Police Department and the County Executive must, therefore, be dismissed.

## Excessive Force Claim

Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U. S. 386, 395 (1989). This "requires balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U. S. 1, 8 (1985) (citation omitted). Factors to be included in making this determination include the severity of the crime, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee. *Graham*, 490 U. S. at 396. The determination is to be made "from the perspective of a reasonable officer on the scene." *Id*. "The Constitution simply does not require police to gamble with their lives in the face of a serious threat of harm." *Elliot v. Leavitt*, 99

---

[6] The notice appears to be an attempt to satisfy the Local Government Tort Claims Act. *See* Md. Cts. & Jud. Proc., Code Ann. § 5-301 *et seq.*.

F.3d 640, 641 (4th Cir. 1996), *reh'g en banc denied*, 105 F.3d 174 (4th Cir. 1997). "The right to make an arrest carries with it the right to use the amount of force that a reasonable officer would think necessary to take the person being arrested into custody." *Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988).

The only facts relevant to the instant claim are the allegations pertaining to the circumstances leading up to Barr's use of force against Plaintiff.[7] The undisputed facts are that Plaintiff was fleeing from the police. Plaintiff admits that he returned to his ex-girlfriend's house, saw the police there, and fled. Paper No. 27. He does not dispute that marked police cars were following him and that he did not immediately stop his car. Papers No. 27 and 41. Barr asserts that when Plaintiff's car was forcibly stopped, Plaintiff began efforts to ram police cars and/or use his car to assault officers standing on the roadside. Plaintiff claims he was attempting to surrender and provides the affidavit of Selma Daniels, a police officer on the scene to support his claim. Paper No. 27 at Ex. H and I ; Paper No. 41. Upon review of the affidavit, however, it is clear that Daniels was not in a position to observe whether Plaintiff was attempting to surrender or he was attempting to hit police officers with his car. Paper No. 27 at Ex. I. The affidavit states that the officer was behind a car and that she only heard the events that transpired. *Id*. Every other affidavit provided by officers on the scene describe Plaintiff's apparent intentional use of his car as a weapon against police. *See* Paper No. 27 at Ex. Q-3, Q-5-- Q-7; Paper No. 28 at Ex. 1 and 3; and Paper No. 44 at Ex. 6. To the extent that Plaintiff asserts Barr knew or should have known he was not armed, the assertion is immaterial. Use of an

---

[7] Plaintiff's claims that he had good reason to remove his daughter from his ex-girlfriend's home, he did not assault his ex-girlfriend, and he could not dangle the child out of the car window because of the injury to his hand are not material to the issue of whether the force used was reasonable. *See* Papers No. 27 and 41.

automobile in the manner described is sufficient to warrant a reasonable belief that the lives and safety of the officers on the scene were in jeopardy.

Plaintiff also disputes Barr's assertion that he did not know there was an infant in the car. Plaintiff's indignation regarding the threat to his daughter's safety is, however, directed at the wrong person. It was Plaintiff who placed the infant in harm's way and his claim regarding the use of force against him is not strengthened by the presence of the child in the car. To conclude that the use of force in this instance was unreasonable because Plaintiff's infant daughter was in the car would suggest that Plaintiff was immune from any use of force regardless of the threat he posed. If Plaintiff's paramount concern was the welfare of his daughter, that concern is not discernible from his actions.

Plaintiff asserts that Barr was settling a vendetta he had against him from a dispute that occurred years earlier at the Montgomery County Detention Center. Paper No. 41. The assertion, however, is unsupported by any evidence that Barr knew who Plaintiff was at the time of the shooting. *See id.* The shooting took place at night and the gun was fired through the front windshield of Plaintiff's car. There is nothing to suggest that Barr had the opportunity to see Plaintiff well enough to identify him as one of many inmates he encountered as a former correctional officer. Plaintiff's bald allegation regarding Barr's motivation is insufficient to establish a genuine dispute of material fact.

Miscellaneous Claims

Plaintiff has attempted to raise numerous additional claims against Defendants, including

slander, conspiracy, various constitutional rights violations,[8] and accusations of malfeasance regarding an investigation of the shooting.[9] To the extent these claims are raised for the first time in Plaintiff's opposition, they are not properly before the Court. Plaintiff did not seek leave to amend his Complaint to include the new claims. In addition, construing Plaintiff's Complaint liberally, the only cognizable claim raised is the Fourth Amendment claim of excessive force addressed above.

## Conclusion

In light of the absence of a genuine dispute of material fact regarding Plaintiff's claim of excessive force, the Court concludes that Defendants are entitled summary judgment in their favor. A separate order follows.

August 30, 2006 _____/s/_____
Date                                                                   Alexander Williams, Jr.
                                                                       United States District Judge

---

[8] Plaintiff asserts that his First, Fourth, Fifth, Eighth and Fourteenth Amendment rights were violated. Paper No. 44. He does not, however, offer any supporting facts to for these conclusions.

[9] Plaintiff claims that no investigation of the shooting took place. Paper No. 41. Defendants have, however, provided a copy of a report prepared after the shooting was investigated. *See* Paper No. 44 at Ex. 4. The report concludes that Barr's decision to shoot Plaintiff was justified in the line of duty. *Id*. at p. 9.